**CHRYSLER CORPORATION and Chrysler Motors Corporation**

v.

**Robert W. RHODES, Commissioner, Department of Safety, et al.**

Civ. A. No. 2928.

United States District Court
D. New Hampshire.

Dec. 5, 1968.

Richard F. Upton, Upton, Sanders & Upton, Concord, N. H., Robert L. Ackerly, and W. Stanfield Johnson, Sellers, Conner & Cuneo, Washington, D. C., for plaintiffs.

° Norman E. D'Amours, Asst. Atty. Gen. for State of New Hampshire, Concord, N. H., for defendants.

## DECISION

BOWNES, District Judge.

The plaintiffs seek by this action declaratory and injunctive relief to prevent the State of New Hampshire from withholding approval of and refusing to pass for inspection plaintiffs' 1969 model Dodge Polara and Dodge Monaco automobiles if equipped with an auxiliary lamp called "Super Lite." Plaintiffs' main contention is that the State lacks authority to interfere in any way with the sale or distribution of automobiles so equipped because of the allegedly preemptive effect of regulations issued pursuant to the National Traffic and Motor Vehicle Safety Act of 1966 (Public Law 89–563; 80 Stat. 718; 15 U.S.C.A. §§ 1391–1409).

The case was heard in two instalments. On September 19, 1968, the Court, after hearing, granted plaintiffs' motion for a temporary injunction on specified conditions no longer relevant. Subsequently, both parties submitted pleadings, requests, and memoranda. The State attached to its answer, by affidavit, correspondence between certain Chrysler officers and officials of the Federal Highway Administration. Of particular note is a letter from Dr. William Haddon, Jr., Director of the National Highway Safety Bureau, to Mr. R. O. Sornson, federal safety coordinator for Chrysler. The Court, perhaps prematurely, ordered judgment for the defendant on October 16, 1968, and included in the decision a reference to the Haddon-Sornson letter.

The plaintiffs immediately moved for reconsideration or alternatively for a stay of the October 16th decision, stating their intention to take the deposition of Dr. Haddon. A hearing on this motion was held (instalment number two) on October 21, 1968, and a stay of the Court's decision was granted, subject to certain conditions, including temporary restraining orders against both parties. Dr. Haddon's deposition was taken on November 1, 1968, and was filed by the plaintiffs with additional pleadings, motions, and memoranda.

The Court has diligently scrutinized and considered all submitted materials and renders judgment for the defendants.

## THE FACTS

On September 18, 1968, the Director of Motor Vehicles for the State of New Hampshire, sent a letter (Defendants' Exhibit A) to all New Hampshire automobile dealers [1] which stated, in effect, that the "Super Lite" was not approved by the Director of the Division of Motor Vehicles and that vehicles so equipped "will not be able to be inspected." The letter relied on New Hampshire Revised Statutes Annotated, Chapter 263, Section 10.[2] At the first hearing, the Court was informed that there were then approximately ten automobiles equipped with the "Super Lite" in the State of New Hampshire. At the second hearing, the State of New Hampshire stated that the "Super Lite" had been tested and that the state highway officials were of the opinion that it constituted a danger which they wanted excluded from New Hampshire highways. Record at 3.

1. The letter was directed to "All Automobile Dealers"—there is nothing to indicate whether or not the letter was limited to Chrysler product dealers.

2. That section provides in relevant part:
   263:10 *Front Lights*. * * * No headlamp shall be used unless it is approved by the director and is equipped with a proper lens or other device designed to prevent glaring rays. No device which obstructs, reflects, or alters the beam of such headlamp shall be used in connection therewith unless approved by the director of the division of motor vehicles. N.H.Rev.Stats. Annot., ch. 263 [Operation of Motor Vehicles] § 10.

In fairness, it should be noted that the light was at least observed by the National Highway Safety Bureau and found not to constitute a danger. Record 12, 14, 15. See letter of Dr. Haddon, affixed as Item "C" to defendants' answer.

■ How extensive and intensive any of the tests were does not appear from the record, but this is of no importance: this Court should not and does not make any findings as to the safety or danger aspects of the "Super Lite."

## RULINGS

It is apparent that a justiciable controversy exists between the plaintiffs and the defendants.

The central issue is whether or not the National Traffic and Motor Vehicle Safety Act of 1966 precludes, by preemption, the State of New Hampshire from applying its own performance standards to an auxiliary front lamp on the plaintiffs' automobiles which are to be sold and distributed within, and for use upon the highways of the State of New Hampshire. The question more broadly stated is: Does the Act preempt state safety-performance standards for motor vehicles and items of motor vehicle equipment and give to the United States Department of Transportation the sole and exclusive authority to establish safety-performance standards for motor vehicles and items of motor vehicle equipment in interstate commerce?

The Court rules that under these facts the Act does not preempt the New Hampshire statute here contested as applied to the plaintiffs' "Super Lite." The manifest language of the statute itself, its legislative history, and elemental considerations of the federal preemptive power compel this conclusion. There is no need for this Court to balance policy considerations of state police power against the all-encompassing power of the federal government over matters of interstate commerce.

■■ (a) *Preemption of Regulatory Power: Generally.*

Congress unquestionably has power under the Commerce Clause to preempt the regulation of motor vehicle safety-performance standards, but where public safety and the exercise of the states' police power is concerned, it may be fairly assumed that Congress does not act *sub silentio* or by inference. See Brotherhood of Locomotive Engineers v. Chicago, R. I. & P. R. Co., 382 U.S. 423, 86 S.Ct. 594, 15 L.Ed.2d 501 (1966), and cases cited id. at 429. There is no language in the 1966 Act expressly preemptive of *all* state regulatory power. There is precise language as to the Act's impact on and preemption of state safety standards:

> Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard. National Traffic and Motor Vehicle Safety Act of 1966, § 103(d); 15 U.S.C.A. § 1392(d).[3]

This language is not completely preemptive of state standards as the plaintiff urges, but the preemption is specifically limited—"Whenever a Federal motor vehicle safety standard * * * is in effect, * * * applicable to the same aspect of performance * * * or item of equipment."

The Court assumes that Congress was aware that most states had laws covering motor vehicle safety requirements prior to the enactment of the National Traffic and Motor Vehicle Safety Act of 1966. Further, the Act abounds with provisions for research, development,

3. P.L. 89–563; 80 Stat. 718 (1966).

cooperative effort, amendment, and revocation [4]—impressive indicia of the non-comprehensive nature of the Act.

The report of the Senate Commerce Committee is clear as to the scope intended by this section: "Accordingly, State standards are preempted *only if* they differ from Federal standards applicable to the particular aspect of the vehicle or item of vehicle equipment." S.Rep.No. 1301, 89th Cong., 2d Sess. 12 (1966). [Emphasis added.] U.S.Code Congressional and Administrative News, p. 2720.

■ The conclusion is inevitable that the Act was not intended to preempt state safety standards as a whole, but only under the specific limitation of Section 1392(d).

(b) *Preemption of Regulatory Power as to "Super Lite."*

There is no provision whatsoever in the *regulations* under the National Traffic and Motor Vehicle Safety Act of 1966 covering the "Super Lite." To be specific, the "Super Lite" installation is neither approved nor disapproved under Motor Vehicle Safety Standard No. 108 (23 C.F.R. § 255.21—regulations pertaining to lamps and associated equipment) although counsel for the plaintiffs argue strenuously that the following language found in Standard 108 allows the use of "Super Lite":

No additional lamp, reflective device, or associated equipment, shall be installed if it impairs the effectiveness of the required equipment. Motor Vehicle Safety Standard No. 108, § 3.1.2.

■ This Court knows of no rule of statutory construction that would allow a court to transpose a general prohibition into authoritative and specific approval. Moreover, the issue is not whether a light can be added under this section, but whether a state can prohibit a light not covered at all by Standard 108 which it has found to constitute a danger.

In the opinion of this Court, neither Section 103(d) of the National Traffic and Motor Vehicle Safety Act of 1966 (15 U.S.C.A. § 1392(d)) nor Standard 108 prevents the State of New Hampshire from requiring that the so-called "Super Lite" be removed, modified, or restricted in its use as to those vehicles on which it is installed prior to sale in the State of New Hampshire, if, after inspection and tests, it is found that the light does not meet the requirements of the applicable New Hampshire statute.

■ There is no question that if there were a conflict between New Hampshire law and federal law in regard to any item of motor vehicle equipment or any applicable safety standard, federal law would control. This proposition is so elemental as to require no recital of authority. However, this is not an instance where an item of automotive equipment is proscribed by the federal authorities and approved by state law or vice versa. No incompatible or directly conflicting safety standards are involved. This case concerns an *extra* light which the State of New Hampshire claims does not comply with its safety requirements as to front lights. (N.H.Rev.Stat. Ann. ch. 263:10). The federal government has neither proscribed nor approved the light.

■ Plaintiffs' counsel has suggested that the only procedure by which the State of New Hampshire can prevent the use of the "Super Lite" on its highways is to request that the Federal Highway Administrator revise Standard 108. But to argue the adequacy of Standard 108, is to assume the issue of preemption— the main issue in question. The specific question is: Can a state proscribe where Standard 108 is silent? In this instance, the Court rules in the affirmative.

■ The omission of an item from the federal standards does not automatically guarantee the safety of that piece of equipment. The doctrine of preemption should not be allowed to force a state to approve as safe a piece of automotive equipment that violates the state's safety

4. 15 U.S.C.A. §§ 1381; 1392(b),–(e),–(f),–(h); 1393(a) and (b); 1395; 1396; 1404; 1406; 1407; 1408; 1409.

requirements merely because the equipment is not specifically precluded by the federal regulations. The constantly increasing carnage on our highways demands ceaseless vigilance by both state and federal governments in the establishment and maintenance of safety standards and regulations for motor vehicles.

The order, therefore, is: judgment for the defendants; motion for summary judgment denied; all temporary injunctions dissolved.